OPINION
Robert Richards is appealing the judgment of the Montgomery County Common Pleas Court, Domestic Relations Division dividing the property between himself and his former wife and granting her spousal support.
Robert Richards and Kay Richards moved in together in the summer of 1992. Prior to moving in, Kay informed Robert that she had a problem abusing marijuana, however Robert believed that with his help she could stop the abuse of the drug. Robert already had four minor children from a previous marriage of which he had custody and received child support. After moving in, Kay began doing the laundry, the cooking, and the cleaning for the entire family. Additionally, Kay would transport Robert's children to their various activities, supervise them while he was often out of town, and accompany Robert to meetings with fellow employees and associates. In June of 1994, Robert and Kay were married. Kay's drug problem continued throughout the marriage despite an attempt at rehabilitation at Dartmouth Hospital. In 1997, after discovering that one of his daughters was caught smoking marijuana, Robert informed Kay that he wanted a divorce. Depressed over his request for a divorce, Kay ceased cleaning after his children and transporting them. However, Kay continued to cook dinners for the family and do the laundry for everyone in the house. Also, Kay continued to remain in Robert's house, sharing the same bedroom.
During the marriage, Robert lost his job at NCR in 1995. Robert then began working at a company named Apogee. In 1998, Robert left Apogee for a company called Market Source. However due to threats of litigation Robert was unemployed for a period of six weeks before beginning work with Market Source. Robert's base annual salary for Market Source is $92,600 with a potential bonus of $20,000. This unemployment combined with his oldest child beginning college caused Robert to increasingly incur debt. Robert took out a home equity loan for $15,000 to pay for his eldest daughter's first year of college education. In 1998, Robert refinanced the mortgage on his home, paying off the first mortgage and the home equity loan. Since the refinancing, Robert has continued to draw on the home equity line of credit. Kay worked as a waitress off and on throughout the marriage. Kay only earned approximately $14,000-$17,000 annually and although she never contributed any of this money to the family finances, Robert handled all of the financial matters and did not ask her to contribute any of her earnings. Additionally during the divorce proceedings, Robert received a settlement from a pending litigation against NCR, which after taxes and attorney fees amounted to $34,532.24. Robert spent this amount paying off debt, which he asserts was marital.
At trial Robert asserted that although he had a greater income than Kay, he was in a worse financial position because of the debts associated with the home and the costs associated with putting his children through college. However, the trial court ruled that Robert's children in college were emancipated and any obligation on his part to pay for his children's college education was strictly voluntary. Therefore, the trial court did not consider the costs of college education for Robert's four children when considering the financial obligations of both parties.
Robert filed for a divorce on June 24, 1999. The trial on the complaint for the divorce was held over three days January 14, 2000, May 1, 2000, and October 30, 2000. The trial court issued its final judgment and decree of divorce on Dec. 6, 2000. Robert filed this timely appeal.
Robert raises the following eight assignments of error:
 1. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED SPOUSAL SUPPORT TO DEFENDANT-APPELLEE WHICH WAS BASED UPON ALLEGED INCOME THE PLAINTIFF-APPELLANT WOULD NOT STILL BE RECEIVING AND SPECIFICALLY INCLUDING CHILD SUPPORT PAYMENTS.
 2. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FOUND THE TERM OF THE MARRIAGE TO BE 8 YEARS AND WHEN IT AWARDED SPOUSAL SUPPORT TO DEFENDANT-APPELLEE WHICH WAS BASED UPON DIFFERING AMOUNTS FOR DEFENDANT-APPELLEE'S INCOME, UPON THE FOREGOING ERRONEOUS TERM OF THE MARRIAGE, UPON DEFENDANT-APPELLEE'S ALLEGED INTENTION TO PURSUE A SUBSTANCE ABUSE TREATMENT PROGRAM AND WHEN IT FAILED TO CONSIDER THE PLAINTIFF-APPELLANT'S INABILITY TO PAY SUPPORT.
 3. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PROPERTY DIVISION TO DEFENDANT-APPELLEE FOR PART OF PLAINTIFF-APPELLANT'S NCR SAVINGS PLAN AND IRA WHICH WERE NOT EARNED NOR CONTRIBUTED TO DURING THE MARRIAGE.
 4. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PROPERTY DIVISION TO DEFENDANT-APPELLEE FOR HALF OF THE HOME'S $15,000 EQUITY PAID FOR EXCLUSIVELY BY PLAINTIFF-APPELLANT WHEN ONLY $8,000 OF EQUITY TOTAL WAS GAINED DURING THE MARRIAGE PART OF WHICH WAS PAID DURING THE YEAR BEFORE THE PARTIES EVEN MOVED IN TOGETHER AND WHEN DEFENDANT-APPELLEE HAD RETAINED OVER $33,000 OF MARITAL ASSETS DURING THE PRECEDING TWO YEARS FOR WHICH NO EQUITABLE AWARD WAS MADE TO PLAINTIFF-APPELLANT.
 5. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PROPERTY DIVISION TO DEFENDANT-APPELLANT'S PENSION PLAN BECAUSE IT BASED THE FINDING UPON AN ERRONEOUS TERM OF MARRIAGE v. TERM OF PARTICIPATION ANALYSIS.
 6. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PROPERTY DIVISION TO DEFENDANT-APPELLEE BASED UPON ALLEGEDLY GIVING PLAINTIFF-APPELLANT THE LUCENT TECHNOLOGIES STOCK WHICH NO LONGER EXISTED AND WHICH WAS SOLD TO PAY JOINT MARITAL DEBTS, EVEN THOUGH THE SEPARATE PROPERTY OF PLAINTIFF-APPELLANT.
 7. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT AWARDED PROPERTY DIVISION TO DEFENDANT-APPELLEE BASED UPON HALF OF THE NCR SETTLEMENT, DEEMING IT TO BE LOST EARNINGS DURING THE MARRIAGE WHEN THERE WAS NO TESTIMONY WHATSOEVER TO THAT EFFECT IN THE RECORD, WHEN IT WAS RECEIVED YEARS AFTER THE PARTIES WERE EFFECTIVELY SEPARATED AND WHEN THE ENTIRE PROCEEDS HAD ALREADY BEEN USED TO PAY MARITAL DEBTS.
 8. THE TRIAL COURT MATERIALLY ERRED AND ABUSED ITS DISCRETION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT ORDERED PLAINTIFF-APPELLANT TO PAY ANY PART OF DEFENDANT-APPELLEE'S ATTORNEY FEES GIVEN THAT DEFENDANT-APPELLEE HAS NOT PAID ANY OF THE MARITAL DEBTS OBLIGATIONS WHILE KEEPING ALL OF HER SEPARATE INCOME AND GIVEN THAT PLAINTIFF-APPELLANT HAS ALREADY PAID OTHER LEGAL FEES FOR DEFENDANT-APPELLEE'S SUBSTANCE ABUSE MATTER.
I. Appellant's first and second assignments of error
Robert's first and second assignment of error assert that the trial court abused its discretion in determining and ordering him to pay Kay $2,000 per month of spousal support for thirty six months. We disagree.
R.C. 3105.18 provides several factors for the trial court to consider in determining whether to award spousal support and if so in what amounts and for what duration. When reviewing a trial court's award of spousal support the standard of review is abuse of discretion. Kaechele v.Kaechele (1988), 35 Ohio St.3d 93. Therefore the judgment of the trial court may only be reversed if it is arbitrary, unreasonable, or unconscionable. Id. The trial court must consider all of the factors enumerated in R.C. 3105.18.
a. Appellant's first assignment of error:
Robert argues that the trial court erred in calculating the spousal support award in part based upon an erroneous calculation of Robert's income and considering Robert's receipt of child support. We disagree.
In this case, the trial court listed the factors it considered including that Robert receives $7,200 of child support annually, including $3,600 for an arrearage. Further, the trial court found that Robert earned $95,000 annually plus a $6,000 bonus annually. In actuality, Robert testified that his annual salary was $92,600 and he had a potential to earn a $20,000 bonus annually. (Vol. I 60). We find the distinction between Robert's actual salary and the salary listed by the trial court is harmless error in which Robert may actually have more income than the trial court credited him. Also, Robert argues that the trial court improperly considered the child support he receives, particularly the $3,600 he receives annually which is an arrearage and will be terminating in the immediate future. However, R.C. 3105.18
provides that the Court may consider "any other factor that the court expressly finds to be relevant and equitable," when awarding spousal support. Further, the child support was only one of the several factors the trial court considered. The trial court also considered that the parties had enjoyed an upper middle class lifestyle, Kay's lack of benefits, Kay's need for $3,000-$4,000 for a substance abuse treatment program, and Kay's contribution to Robert's earning ability. Therefore, we cannot say that the trial court abused its discretion in considering Robert's receipt of child support and slightly miscalculating his income when ordering spousal support. Robert's first assignment of error is without merit and overruled.
b. Appellant's second assignment of error:
Robert argues that the trial court abused its discretion in determining that the length of his marriage with Kay was eight years, in listing that Kay's annual income was both $17,000 and $20,000, in failing to consider Robert's financial obligation to pay for his children's college education, and in considering Kay's drug abuse. We disagree.
Initially, Robert argues that the trial court erred in determining the length of marriage between Robert and Kay extended from July of 1992 until October of 2000. R.C. 3105.171(A)(2)(a) provides that, "`During the marriage' means * * * from the date of the marriage through the date of the final hearing in an action for divorce." However, R.C.3105.171(A)(2)(b) provides an alternate means of calculating the length of the marriage stating:
 If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
Robert argues that he and Kay were not married until June of 1994 and the trial court abused its discretion in considering the parties married from July 1992. (Vol. I 30, 56). Both Robert and Kay testified that they moved in together in the summer of 1992. Additionally, Robert and one of his daughters testified that Kay contributed the most to the house in the beginning of their relationship. (Vol. I 22, Vol. II 38-40). Kay performed all of the laundry in the home for Robert and his four children, she cooked the evening meals, slept in the same bed with Robert, cleaned the house, and she transported his children to their various activities. (Vol. II 38-40; Vol. III 8-9). Therefore we find that Kay contributed to the household beginning in 1992 when she moved in with Robert and thus the trial court did not abuse its discretion in determining that the marriage effectively began in July of 1992.
As to the end date of the marriage, R.C. 3105.171(A)(2)(a) suggests the date of the final hearing in an action for divorce as the end date of the marriage. Similarly, the trial court chose the date of the final hearing on Robert and Kay's divorce as the end date of the marriage. Robert argues that the trial court should have chosen as the end date of the marriage a time closer to when Robert told Kay that he wanted a divorce. In 1997, Robert told Kay he wanted a divorce and Kay testified that shortly after he told her she stopped doing many of her tasks for the house, although she continued to prepare dinners for the family and launder the clothes for everyone in the house. (Vol. III 36). Robert argues that the trial court did not sufficiently consider the testimony of his eldest daughters that Kay did nothing for the household. (Vol. I 21-22, 7-9). However, the statements of the daughters were contradicted by Robert's testimony which confirmed that Kay contributed to the household as she described. (Vol. III 38-40). Further, under cross examination, the daughters made it clear that they did not like Kay and that Robert had told them that if the court ordered him to pay Kay spousal support he would not be able to continue to pay for their college education. (Vol. I 16-17, 21, 28-29). In fact, the daughters' hostility towards Kay was so apparent that at the end of the first day of hearing on the divorce, the trial court cautioned Robert about the hostility possibly being too severe for Kay to remain in his home. (Vol. I. 65-67). Thus, a trial court is the best suited judge of credibility and may have given little weight to the testimony of the daughters. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80. However, both parties admitted that Kay continues to reside in the same home as Robert, sharing the same bed, Kay continues to do the laundry for everyone in the home, and that Kay cooks dinners for the family. (Vol. II 38-40, 52-53; Vol. III 8-9). Therefore, the trial court did not abuse its discretion in finding that the end date for the marriage was October 2000.
Additionally, Robert argues that the trial court committed an abuse of discretion in awarding spousal support because it listed Kay's income twice, once as $17,000 and then again as $20,000. Kay earned approximately $14,500 in 1998 and $16,500 in 1999. (Vol. II 40-41). Further she testified that through September 2000, she had made $14,956.61 which would put her on pace to earn slightly less than $20,000 for the year. (Vol. II 29-30). We find that this was a harmless typographic error and that support for both figures was present in the evidence. The $3,000 distinction does not demonstrate an attitude on behalf of the court which is unreasonable, arbitrary, or unconscionable when compared to Robert's much higher income and that this was only one of several factors the trial court considered. We cannot find that the trial court abused its discretion.
Also, Robert argues that the trial court abused its discretion in ordering him to pay spousal support by disregarding his inability to pay due to his obligation to pay for his emancipated children's automobiles and college education. Robert owes no duty at law to pay for his emancipated children's college education and he receives child support to defray the costs of raising the remaining minor children. We cannot find that the trial court demonstrated an attitude that was arbitrary, unreasonable, or unconscionable in prioritizing the needs of Robert's wife, Kay, over those of his emancipated children. The trial court did not abuse its discretion.
Finally, Robert argues that the trial court abused its discretion in considering Kay's need for a substance abuse treatment program when considering a spousal support award. Robert argues that neither he nor the marital estate will receive any benefit from Kay's substance abuse treatment and therefore that it is improper for the trial court to consider it in awarding spousal support. R.C. 3105.18 sets forth that the trial court in determining whether to award spousal support shall consider "the physical, mental, and emotional condition of the parties." Robert admitted that Kay's substance abuse was an illness. (Vol. II 57-58). Therefore we cannot find that the trial court abused its discretion in considering that Kay has a substance abuse problem and needs treatment in order to recover, which will cost $3,000-$4,000.
Robert's second assignment of error is without merit and overruled.
II. Appellant's third, fourth, fifth, sixth, and seventh assignments of error:
In Robert's fourth, fifth, sixth, and seventh assignments of error he argues that the trial court abused its discretion in dividing marital property between Kay and Robert. We agree in part and disagree in part.
A trial court has broad discretion when dividing marital property.Berish v. Berish (1982), 69 Ohio St.2d 318. A reviewing court may substitute its judgment for the trial court's if the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. A trial court will be found to have abused its discretion if it fails to address the factors listed in R.C.3105.18 in arriving at its decision. Bisker v. Bisker (1994),69 Ohio St.3d 608, 609. The factors listed in R.C. 3105.18(F) for the trial court to review are as follows:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
 (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
 (5) The economic desirability of retaining intact an asset or interest in an asset;
 (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 (9) Any other factor that the court expressly finds to be relevant and equitable.
a. Appellant's third assignment of error:
Robert argues that the trial court abused its discretion when it awarded a percentage of his NCR Savings Plan and IRA to Kay when dividing the marital property between them. We agree.
R.C. 3105.171 provides that only the property that was acquired during the marriage may be divided upon divorce. Passive income is not a marital asset and should not be divided upon divorce. R.C. 3105.171(A)(4). The evidence presented demonstrated that Robert made no contribution to either the NCR Savings Plan or the IRA during his marriage to Kay. (Vol. II 15, 17). The only contribution made during the marriage was by his employer in the amount of $22.57. (Vol. II 15-16). Therefore, the appreciation in these accounts was due solely to passive income and as such is not a marital asset and should not be divided as part of the divorce. The trial court therefore abused its discretion when it awarded Kay one half of ten percent of these accounts. Robert's third assignment of error is sustained.
b. Appellant's fourth assignment of error:
Robert argues that the trial court abused its discretion in determining that during the marriage the house accrued $15,000 of equity and awarded Kay one half of that amount. We disagree.
At trial, Robert testified that during the marriage the marital home was paid down by $8,000. (Vol. II 68-69). Kay testified that she did not contest that calculation. (Vol. III 11). At trial, neither party offered evidence of the value of the home at the time the marriage began or at the time of divorce. Robert had purchased the home one year prior to Kay moving into the house. (Vol. I 30; Vol. II 3-4). As determined above, the trial court did not abuse its discretion in determining that the length of the marriage extended from the date Kay moved in until the date of the final hearing on the divorce. Robert also testified that during the marriage he took out a $15,000 home equity loan to pay for a year of one of his emancipated daughter's college education. (Vol. II 6). Robert argues that the trial court should not have awarded Kay more than one half of the $8,000 which he testified had been paid on the house during the marriage. However, this amount does not calculate the appreciation in the home during the years of marriage. In rendering its decision the trial court determined that the increase in the value of the home during the years of marriage was $15,000 and therefore awarded Kay one half of that amount. Considering the evidentiary vacuum before the trial court on the increase in the value of the home during the marriage, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable in utilizing the amount Robert took out as a home equity loan as the increase in the value of the home.
Further Robert argues that Kay should not receive one half of the equity in the home because she did not financially contribute to the marriage and portions of her income as a waitress were used for her substance abuse. However, Robert testified at trial that he took care of all of the financial affairs in the household and that he never requested Kay to financially contribute. (Vol. II 38). Further, Kay made significant contributions to the household by cooking meals for the house, laundering the clothes for everyone in the house, cleaning the house, and caring for and transporting Robert's children. (Vol. III 8-9). We cannot say that the trial court abused its discretion in awarding Kay one half of the $15,000 it determined was the equity in the home. Robert's fourth assignment of error is without merit and overruled.
c. Appellant's fifth assignment of error:
Robert argues that the trial court abused its discretion in awarding Kay part of his pension plan based on the determination that he and Kay were married for three of the thirty years Robert worked and earned the pension plan rather than one year as Robert suggests. We disagree.
Robert worked for NCR for thirty years, contributing to the pension plan. Robert ceased working for NCR in May of 1995 and the contributions to the pension plan ceased. Robert argues that he and Kay married in June of 1994 and therefore she should only be able to receive part of his pension plan for the eleven months of their marriage in which he worked at NCR. However, as discussed in the second assignment of error, the trial court did not abuse its discretion in determining the start of the marriage was July of 1992. Therefore, the trial court did not commit an abuse of discretion in finding that Kay was entitled to one half of Robert's pension for the thirty four months of the 362 months he worked for NCR. Robert's fifth assignment of error is without merit and overruled.
d. Appellant's sixth assignment of error:
Robert argues that the trial court abused its discretion in awarding property to Kay based upon awarding Robert certain Lucent Technology stock which was sold prior to the divorce proceedings. We disagree.
"A trial court is required to determine what property is marital and what property is separate, and to distribute the parties' separate property to each of them and divide and distribute their marital property equitably between them." Fricke v. Martin-Fricke (May 18, 2001), Greene App. No. 00CA57, unreported citing R.C. 3105.171(B) (D).
In its decision, the trial court when dividing the parties' marital property stated, "[Robert] shall retain the ATT stock and the Lucent Technologies stock, which are his separate property." (Decision 3) (emphasis added). Robert argues that the trial court was equitably dividing marital property when it granted the Lucent Technologies stock to Robert and therefore Kay received some property in exchange for Robert receiving the Lucent Technologies stock. However, Robert testified at trial that the Lucent Technologies stock was sold during the marriage to pay marital debts. Thus, Robert argues that he should receive some property in exchange for the trial court's attempt to grant him the Lucent Technologies stock which no longer existed. Yet, the trial court specifically found that the Lucent Technologies stock was Robert's separate property. Therefore, the trial court did not award any property to Kay in exchange for awarding Robert the Lucent Technologies stock. Thus, the trial court did not abuse its discretion in awarding the marital property it did to Kay and awarding the Lucent Technologies stock, the separate property, to Robert, even if it no longer existed. Robert's sixth assignment of error is without merit and overruled.
e. Appellant's seventh assignment of error:
Robert argues that the trial court abused its discretion when it awarded property to Kay based on one half of the NCR litigation settlement. We agree.
At trial, evidence was presented that after paying his attorney fees and taxes, Robert was left with $34,532.24, which was spent paying debts. (Vol. III 4-5, 51). Robert presented a joint exhibit showing what bills he paid with the settlement funds, which showed as follows:
[Settlement amount] $34,532.24
[Robert's divorce attorney] $ 5,000.00
$29,532.24
Discover $ 7,327.01 $22,205.23
Lazarus $ 425.91 $21,779.32
Key Bank $ 3,854.80 $17,924.52
ATT $ 4,091.79 $13,832.73
Wachovia $ 6,994.63 $ 6,838.10
Elder Beerman $ 1,883.39 $ 4,954.71
Wachovia LOC $ 2,619.99 $ 2,334.72
Home Equity Reserve $ 2,000.00 $ 334.72
(Joint Exhibit 2).
Robert never testified as to who accumulated these debts or what was purchased with the funds, only stating:
 [Kay] received a significant benefit as the rest of us did in the household. Some of it was directly to her in terms of clothing, cosmetics, eating out. As you mentioned, the 900-some dollar final payment for [Kay's car which was totaled] was charged on one of those credit cards.
However, in other testimony, Robert had testified that he received $5,000 from the insurance company for Kay's totaled car of which he used $2,000 to buy Kay a new car and the remaining $3,000 to pay off other household bills.(Vol. III 55). Regarding the settlement, Kay testified on direct questioning by her attorney as follows
 Q. Could you turn to Joint Exhibit 2 which — do you believe you have — let me remind you that those were expenses that your husband paid from the proceeds of the NCR settlement. First of all, with regard to [Robert's divorce attorney], that won't be any expense that you incurred, would it?
A. No.
Q. That's $5,000?
A. No.
Q. And did you charge anything to the Discover Card?
A. No, I didn't.
 Q. Do you have any idea of what that bill represents, what purchases?
A. No.
 Q. And the Lazarus bill for $425, did you ever charge anything with Lazarus?
 A. Uh, Lazarus and Elder-Beerman, I used at Christmas to buy presents for the children, but I don't have access to the cards.
 Q. All right. When would be the last time that you purchased presents for the children?
A. Probably Christmas of `98.
 Q. The Key bank accounts of $3,854, did you incur that indebtedness?
A. No.
 Q. To your knowledge, did you benefit from that indebtedness?
A. Not to my knowledge, no.
 Q. There is an ATT, $4,009. Did you incur that indebtedness?
A. No, I didn't.
Q. To your knowledge did you benefit?
A. No.
 Q. What's the Wachovia payment of $6,994? Did you incur that indebtedness?
A. No, I didn't.
 Q. To your knowledge, did you benefit from that indebtedness?
A. No, not to my knowledge.
 Q. There is a second Wachovia LOC indebtedness of $2,619. Did you incur that?
A. No, I didn't.
Q. Did you benefit from this.
A. No.
 Q. There is a home equity reserve, $2,000. To your knowledge have you benefited from that?
A. No.
Q. Have you utilized a home equity loan?
A. No.
(Vol. III 22-24). Under cross examination, Kay testified as follows about the NCR settlement:
 Q. And you indicated that you, on the various debts that were paid off by this settlement from NCR, that you did not in any way benefit by those. You don't know what [Robert] charged on those credit cards, do you, what expenses were charged, do you?
A. No, I don't. He doesn't tell me.
Q. You don't know if he benefited or not; isn't that true?
 A. I suppose so. I mean if you found that maybe he used the credit cards to help pay the mortgage and that kind of thing, you know, I guess I would have benefited, because I'm still living there, but I did not see any money myself.
 Q. And for a long time, even after [Robert] announced that he was going to — he wanted a divorce, he paid for your clothing, did he not?
 A. He bought me Christmas presents. He has not bought my clothing, no.
(Vol. III 38).
The trial court found that the settlement after tax withholding and payment of the marital debt was $34,532.24 and ordered Robert to compensate Kay for one half of that amount. Robert argues that this was an abuse of discretion because the entire settlement was spent paying off marital debt prior to the filing of the divorce decree. Therefore, he argues there was nothing to divide. However, Kay argues that the debts which Robert paid were his separate debts, not marital debts, and therefore she should be entitled to one half of the funds. The evidence presented to the trial court as to what the debts were incurred for was scant. While it appears that portions of the debts were marital, such as the final payment on Kay's vehicle, other debts appear to clearly be separate, such as Robert's divorce attorney fees. However, as evidence was presented that at least a portion of the $34,532.24 was spent paying marital debts, the trial court did abuse its discretion in awarding one half of this amount to Kay. Yet, it appears that Kay is entitled to a portion of the settlement funds which were spent on separate debts, such as Robert's divorce attorney fees. Therefore, Robert's seventh assignment of error is sustained and the judgment of the trial court is reversed and remanded for a hearing and determination on what portion of the NCR settlement funds was spent on marital debt.
III. Appellant's eighth assignment of error:
Robert argues that the trial court abused its discretion in ordering him to pay a portion of Kay's attorney fees when Kay has not financially contributed to the marital debts and obligations. We disagree.
Kay incurred approximately $9,500 in attorney fees in this divorce. (Vol. III 22). The trial court ordered Robert to pay 67% of her attorney fees as spousal support. (Decision 11). Robert argues that Kay has not contributed any of her approximately $16,000 annual income to the household expenses or marital debt and therefore he should not have to pay a portion of her legal fees. However, Kay testified that her income is spent paying for gas, parking, food, entertainment, and car payments, leaving her nothing to pay for her attorney. The trial court found that Kay is in need of support and based on her income, ability, and assets did not have the ability to provide for her representation in the divorce. We cannot find that ordering Robert to pay a portion of Kay's attorney fees was an abuse of discretion.
However, in its decision on the award of attorney fees, the trial court states, "defendant [Kay] is ordered to pay to plaintiff [Robert] 67% of her $9,500 necessary legal expenses, for a total obligation of $6,500 * * *. (Decision 11). We find that this is clearly a typographic error. Thus, Robert's eighth assignment of error is sustained and we reverse and remand the judgment for a Rule 60(A) clarification.
The judgment of the trial court is affirmed in part and reversed and remanded in part.
WOLFF, P.J. and FAIN, J., concur.